```
                                              USDC SDNY
UNITED STATES DISTRICT COURT                  DOCUMENT
SOUTHERN DISTRICT OF NEW YORK                 ELECTRONICALLY FILED
------------------------------------------------------------X  DOC #:_____
                                           :  DATE FILED: 2/10/2017
DAVID BUSH,                                :
                              Plaintiff,   :
                                           :  15 Civ. 2062 (LGS) (DF)
              -against-                    :
                                           :  OPINION AND ORDER
CAROLYN W. COLVIN,                         :
  Acting Commissioner of Social Security,  :
                                           :
                              Defendant.   X
------------------------------------------------------------
```

LORNA G. SCHOFIELD, District Judge:

Plaintiff David Bush filed this action against the acting Commissioner (the "Commissioner") of the Social Security Administration (the "SSA") on March 19, 2015, seeking review of the final decision of an Administrative Law Judge ("ALJ") denying him benefits under the Social Security Act (the "Act"). Before the Court is a Report and Recommendation of Magistrate Judge Debra Freeman (the "Report"), recommending that the Court grant Plaintiff's motion for judgment on the pleadings and deny the Commissioner's cross-motion for judgment on the pleadings. The Commissioner objected to the Report. For the following reasons, the recommendation to grant Plaintiff's motion is adopted, the case is remanded to the SSA and the Commissioner's motion is denied.

I.     BACKGROUND

The following facts are taken from the administrative record and the parties' submissions.

Plaintiff claims disability based on a number of health issues, including stroke, hypertension, heart failure, pervasive vascular disease, diminished dexterity, diminished eyesight, diminished kidney function, and an aneurism. Plaintiff alleges that he has been

disabled since December 28, 2011, and seeks both disability insurance ("SSDI") benefits and Supplemental Security Income ("SSI") benefits under the Act.

### A. Plaintiff's Initial Application for Benefits

Plaintiff applied for SSDI benefits on March 9, 2012, and applied for SSI benefits on April 2, 2012. His claims were denied on August 2, 2012, and Plaintiff requested an administrative hearing before an ALJ. A hearing was held on June 14, 2013, to determine whether Plaintiff is disabled within the meaning of the Act. Plaintiff appeared at the hearing, represented by an attorney.

At the hearing, Plaintiff amended his onset date from November 7, 2011, to December 28, 2011. Plaintiff testified that since December 2011, he had worked only a few days painting fences. He testified that after his stroke, he was completely blind for a period, and now suffers from bouts of double vision, has trouble focusing, and has much greater difficulty seeing in the dark than in the light. He testified that he does not watch television or use a computer because of his eyesight and difficulty focusing. He previously worked as an installer of truck accessories, a cell phone salesman, an RV technician, a car alarm installer, and a generator technician. He completed ninth or tenth grade and does not have a GED. He also testified that he suffers from shortness of breath and chest pain upon exertion. Although he shops for food once a month for approximately 20 to 30 minutes, he noted that he has difficulty walking for longer periods and spends most of his time sitting. Plaintiff testified that he can usually lift a gallon of milk without symptoms, but his doing so often depends on whether he has taken his medication.

Plaintiff was the only witness at the hearing. No vocational expert testified about what jobs Plaintiff can or cannot perform in light of his limitations.

On September 20, 2013, the ALJ found that Plaintiff is not disabled. In making that determination, the ALJ conducted a five-step sequential analysis used by the SSA in determining disability. 20 C.F.R. §§ 404.1520; 416.920. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of his disability. At step two, the ALJ found that Plaintiff suffers from the following severe impairments: pulmonary valve disorder; coronary artery disease, status post multiple stenting; "status-post questionable CVA;" peripheral arterial disease; renovascular hypertensive disease with bilateral renal stent placement; chronic kidney disease due to hypertension and atherosclerosis, status-post stage III acute renal failure; migraine headaches, and obesity. The ALJ also determined that Plaintiff's alleged mental impairment and diplopia (double vision) resulted in minimal, if any, limitations on Plaintiff's ability to perform basic work-related physical and mental activities, and were therefore non-severe.

At step three, the ALJ found that Plaintiff's impairments do not meet or equal a listed impairment, which would, without more, qualify him as disabled. The ALJ then examined Plaintiff's residual functional capacity and found that Plaintiff has residual functional capacity to perform light work, except for work at unprotected heights. At step four, based on his residual functional capacity, the ALJ found that Plaintiff is unable to perform his past relevant work as an auto parts/car alarm installer/salesperson. At step five, based on his age, education, work experience, and residual functional capacity, the ALJ determined that there are jobs that exist in significant numbers in the national economy that the claimant can perform, and he is therefore not disabled within the meaning of the Act. The ALJ denied Plaintiff's claims.

In reaching his conclusions at step two that Plaintiff's visual impairment is non-severe, the ALJ discussed the notes of Mandes Kates, M.D., a treating ophthalmologist and Elena

Kaznatcheeva, M.D., a neurologist, and the opinion of Thien Huynh, M.D., who performed an ophthalmologic consultative evaluation.

In reaching his conclusions at step four regarding Plaintiff's residual functioning, the ALJ relied partly on Plaintiff's medical records and findings of doctors.  The ALJ considered the treating source opinion of Dr. Obligado, a nephrologist.  Obligado opined that Plaintiff's ability to lift and carry was limited to lifting 20 pounds occasionally; his ability to stand and/or walk was limited to up to two hours per day; his ability to sit was not limited; and his ability to push and/or pull was limited.  The questionnaire that Obligado filled out for the New York State Office of Temporary and Disability Assistance was sparse -- some questions were left unanswered and others had minimal answers.  The ALJ accepted Obligado's opinion only with regard to Plaintiff's ability to lift and carry and sit because his exams "fail to support the standing and walking limitation."  Dr. Rehan Khan, a consulting physician, opined that Plaintiff's hand and finger dexterity were intact, but grip strength was 4/5 in the right upper extremity.  He also opined that Plaintiff had no gross physical limitations for sitting, standing or walking, or use of the right upper extremity, and no limits for bending, kneeling, climbing, or squatting, but that Plaintiff should avoid activities of moderate or greater exertion.  Khan also found a moderate limitation for fine visual acuity. Finding Khan's opinion "vague" regarding carrying and lifting, the ALJ determined that State Agency medical consultants P.S. Seitzman, M.D., and Judith Bodnar's, M.D., opinions "very persuasive" because they were more specific.  Seitzman and Bodnar -- who did not physically examine Plaintiff -- opined that the Plaintiff had residual functional capacity to perform a full range of light work.  Dr. Thien Huynh, a consulting ophthalmologist, examined Plaintiff in July 2012.  Huynh concluded that his clinical exam was "essentially normal with no findings seen that would suggest poor vision in the right eye."

Huynh cautioned that "it is possible that he suffered macular infarction of the right eye from the hypertensive episode," and recommended a retinal consult for a fluorescein angiogram and a strabismus.

The ALJ also cited six reasons for doubting the credibility of Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms. Among these, the ALJ notes that Plaintiff had not had any recent surgery or cardiac catheterization and received treatment that is essentially "routine and/or conservative in nature," such as medication and lifestyle modification. The ALJ also noted that the record does not contain any opinions from treating or examining physicians indicating that Plaintiff is currently disabled, and that Plaintiff worked only sporadically prior to his alleged disability onset date.

### B. Proceedings Before the Appeals Council

Plaintiff appealed the ALJ's decisions to the SSA's Appeals Council ("Appeals Council") on November 14, 2013. Plaintiff submitted additional medical records, which show that prior to the date of the ALJ's decision, but after the hearing, Plaintiff underwent a second angioplasty. As of June 2014, after the ALJ's decision, Plaintiff was scheduled to undergo at least a third cardiac catheterization. On January 6, 2015, the Appeals Council issued a summary notice denying Plaintiff's request to review the ALJ's decision.

### C. Proceedings Before Judge Freeman

Plaintiff filed a civil action seeking review of the ALJ's decision. The case was referred to Judge Freeman for a report and recommendation. On December 8, 2015, Plaintiff moved for judgment on the pleadings on three grounds. First, Plaintiff argued that substantial evidence does not support the ALJ's conclusion that Plaintiff can perform light work, except for work at unprotected heights due to his headaches. Plaintiff asserts that he cannot stand or walk for 6

5

hours out of an 8 hour day, as required to perform light work, and that the ALJ ignored evidence of Plaintiff's visual impairment.  Second, Plaintiff argues that the ALJ did not properly consider the treating physician rule by failing to give the medical opinion from Dr. Obligado due weight and in determining that the opinions by medical consultants Seitzman and Bodnar were "very persuasive."  Third, Plaintiff argues that he did not receive a full and fair hearing.  Plaintiff asserts that the ALJ based his decision primarily on agency consultants who did not examine Plaintiff or review all of the evidence in the record, accorded little weight to the Plaintiff's medical records, and that the ALJ failed to enlist a vocational expert.  The Commissioner opposes Plaintiff's motion, and cross-moves for judgment on the pleadings.

On December 13, 2016, after considering both motions and the record, Judge Freeman issued the Report.  The Report recommends that Plaintiff's case be remanded to the SSA with instructions for the ALJ to:  (1) give proper weight to the opinion of Plaintiff's treating source physician, Dr. Obligado, and set out good reasons for any determination that the opinion is not entitled to controlling weight; (2) develop the record by obtaining medical source statements from Plaintiff's other treating physicians detailing how Plaintiff's impairments affect his ability to perform work-related activity; (3) consider the evidence submitted to the Appeals Council regarding Plaintiff's additional visits to Dr. Obligado; and (4) obtain the testimony of a vocational expert should a re-evaluation of the evidence lead to the conclusion that Plaintiff's impairments significantly limit the range of work that he could otherwise be expected to perform.

The Report concludes that the ALJ improperly applied the treating physician rule when assessing Dr. Obligado's opinion.  By evaluating the supportability of Obligado's opinion and

none of the remaining factors set forth in the regulations, the Report concludes the ALJ committed error.  *See* 20 C.F.R. §§404.1527(c)(3), 416.927(c)(3).

Second, the Report concludes that the ALJ failed in his affirmative duty to develop the record by failing to seek clarification and additional information from treating physicians. Despite Plaintiff's treatment by cardiologist Dr. Portelli, general practitioner Dr. Carey, ophthalmologist Dr. Kates, and others, Obligado's opinion is the only treating physician's opinion in the record.  The Report notes that it is difficult to review whether the ALJ's decision is supported by substantial evidence without these opinions in the record.

Third, the Report concludes that on remand, the ALJ should consider the additional evidence submitted to the Appeals Council.  Finally, the Report concludes that, should a re-evaluation of the evidence in light of the other instructions to the ALJ lead to the conclusion that Plaintiff's non-exertional impairments significantly limit the range of work he would otherwise be able to perform, then ALJ should obtain testimony from a vocational expert. *See Selian*, 708 F.3d at 421 (an "ALJ cannot rely on the Grids if a non-exertional impairment has any more than a 'negligible' impact on a claimant's ability to perform the full range of work, and instead must obtain the testimony of a vocational expert.")

### D.  The Commissioner's Objection

The Commissioner objects to the Report on three grounds. First, the Commissioner argues that the ALJ fulfilled his duty to develop the record as the ALJ was not required to request treating source opinions, and the ALJ properly developed the record with respect to Plaintiff's visual impairment.  Second, the Commissioner argues that the ALJ properly weighted Dr. Obligado's treating source opinion.  The Commissioner also contends that the ALJ's determination as to Plaintiff's credibility was properly supported by substantial evidence.  Third,

the Commissioner objected to the Report's purported conclusion that remand is necessary because Plaintiff submitted new and material evidence to the Appeals Council.

## II.     LEGAL STANDARD

A reviewing court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The district court "may adopt those portions of the report to which no 'specific, written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those section are not clearly erroneous or contrary to law." *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 72(b)); *see also Thomas v. Arn*, 474 U.S. 140, 149 (1985).

"If a party timely objects to any portion of a magistrate judge's report and recommendation, the district court must 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015) (quoting 28 U.S.C. § 636(b)(1)). Even where exercising de novo review, a district court "need not . . . specifically articulate its reasons for rejecting a party's objections or for adopting a magistrate judge's report and recommendation in its entirety." *Morris v. Local 804, Int'l Bhd. Of Teamsters*, 167 F. App'x 230, 232 (2d Cir. 2006) (summary order). "[W]hen a party makes only conclusory or general objections, or simply reiterates the original arguments," the district court reviews a report and recommendation only for clear error. *Davis v. Comm'r of Soc. Sec.*, No. 15 Civ. 6301, 2016 WL 3453452, at *1 (S.D.N.Y. June 16, 2016).

"A claimant is disabled and entitled to disability insurance benefits if she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or

8

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *McIntyre v. Colvin*, 758 F.3d 146, 149–50 (2d Cir. 2014). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quoting 42 U.S.C. § 405(g)). "Substantial evidence is more than a mere scintilla . . . . [i]t means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Asture*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009); *accord Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

### III.  DISCUSSION

Based on a de novo review of the administrative record, the Report, Defendant's Objections and applicable legal authorities, the Report is adopted in its entirety. The portions of the Report as to which no objections were made are adopted because those portions are not clearly erroneous. Any of Defendant's Objections not specifically addressed in this decision have been considered de novo and rejected.

#### A.  Treating Source Rule and Duty to Develop the Record

The Report correctly concluded that the ALJ improperly applied the treating physician rule when assessing the testimony of Dr. Obligado. The treating source rule is set out in federal regulations:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a

9

> unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply [a set of factors] . . . in determining the weight to give the opinion.  We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. §§ 404.1527(c), 416.927(c).  Accordingly, the treating physician rule generally requires deference to the medical opinion of the claimant's treating physician.

"In order to override the opinion of the treating physician, [the Second Circuit has] held that the ALJ must explicitly consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist. *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (citing *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013).  While, as the Commissioner has pointed out, "no . . . slavish recitation of each and every factor [is required] where the ALJ's reasoning and adherence to the regulation are clear," *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order), the ALJ must, after considering the above factors, "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion."  *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129).

Here, as the Report found, the ALJ's decision does not reflect complete consideration of the four factors.  Obligado concluded that Plaintiff could occasionally lift 20 pounds and stand or walk up to two hours per day; that Plaintiff's ability to sit was unrestricted; and that Plaintiff's ability to push or pull was limited, though he provided few details on the questionnaire he filled out.  The ALJ accepted Obligado's opinion regarding Plaintiff's ability to lift and carry and sit,

but disregarded Obligado's opinion regarding standing and walking stating "[h]is exams fail to support the standing and walking limitation." While the ALJ is not required to recite each factor, the ALJ must still "explicitly consider" the factors set forth in SSA regulations, *Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d 496, 507 (S.D.N.Y. 2014), and "comprehensively set forth [his] reasons for the weight assigned to the treating physician's opinion." *Burgess*, 537 F.3d at 129.

Second, Judge Freeman correctly found that the ALJ's failure to "seek clarification and additional information from the physician, as needed, to fill any clear gaps before rejecting [Obligado's] opinion," *Rolon*, 994 F. Supp. 2d at 504, was in error. Judge Freeman also found that the ALJ committed error by failing to seek additional treating source opinions. The Commissioner argues that the ALJ was not required to obtain additional treating source opinions and that there was no obvious gap in the record that warrants remand. Having reviewed the record de novo, the Commissioner's arguments are unavailing.

The ALJ has an affirmative duty to develop the record. *See Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982); *accord La Torre v. Colvin*, No. 14 Civ. 3615, 2015 WL 321881, at *11 (S.D.N.Y. Jan. 26, 2015). The ALJ has a "duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Moran v. Astrue*, 569 F.3d 108, 112–13 (2d Cir. 2009), *accord Sims v. Apfel*, 530 U.S. 103, 111 (2000); *Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004). When the administrative record contains gaps or the ALJ does not have a complete medical history, the duty to develop the record includes seeking additional information to address any such gaps. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). The Social Security regulations require an ALJ to "[make] every reasonable effort to obtain evidence from your medical sources," and note that consultative examinations will not be requested until "we have made every reasonable effort to obtain

11

evidence from your own medical sources." 20 CF.R. §§ 404.1512(d) – (e), 404.1517, 416.912(d)-(e), 416.917.

Here, with respect to Plaintiff's exertional limitations, the ALJ had only Dr. Obligado's brief opinion which the ALJ accepted only as to Plaintiff's ability to lift, carry and sit; the opinion of consultative examiner Dr. Khan, who appears to have examined Plaintiff only once;[1] and undeveloped record reviews by Seitzman[2] and Bodnar.  Although Plaintiff was treated by additional treating physicians whom he saw repeatedly, including Dr. Portelli at the Heart Center, general practitioner Dr. Carey, and ophthalmologist Dr. Kates, among others, the ALJ did not contact any of these treating physicians for further information.  Instead, the ALJ rejected Obligado's opinion -- the only treating source opinion in the record -- regarding Plaintiff's standing and walking limitation; accepted Khan's opinion that Plaintiff had no gross physical limitations for sitting, standing or walking, or using the right upper extremity, but disregarded his opinion regarding Plaintiff's upper right extremity; and accepted Seitzman and Bodnar's opinions regarding lifting and carrying because Khan's opinion was "vague" and theirs were more specific, although it is unclear what evidence Seitzman and Bodnar relied upon in making their determination.

---

[1] Judge Freeman noted that Dr. Khan examined Plaintiff only once.  The ALJ's report states that Dr. Khan examined Plaintiff in May and June of 2012.  Although the record shows that Dr. Khan examined Plaintiff on May 18, 2012, and completed an "addendum" to his notes on June 5, 2012, it appears that the addendum may have been simply a revision to his prior notes.

[2] For example, on June 25, 2012, Seitzman initially opines that Plaintiff "[c]an lift 10 lbs. occasionally.  Can walk or stand 2 hours/day.  Can sit 6 hours/day.  Cannot do a full range sedentary activities."  Three days later, Seitzman concludes, without explanation, that "[i]f vision is correctible enough, then I would change my RFC to Can lift 20 lbs. occasionally, and 10 lbs. frequently."

Similarly, with regard to Plaintiff's vision problems, the ALJ did not have and did not seek a treating source opinion. Although Khan, a consulting physician, opined that Plaintiff had mild to moderate limitation to activities requiring fine visual acuity, the ALJ gave it "very little weight" in part because it was "in contrast" with consulting ophthalmologist, Dr. Huynh. Dr. Huynh concluded that Plaintiff's clinical exam was "essentially normal," but Huynh's opinion expressed reservations regarding possible vision problems that the exam was not able to detect. Huynh recommended a retinal consult and a strabismus, and concluded that Plaintiff may have "suffered macular infarction of the right eye from the hypertensive episode."

Although any of these decisions on their own may not have raised doubt about whether substantial evidence supports the ALJ's determination, the Report is correct that when the record is viewed as a whole, a collection of problems emerge that when taken together "result[] in an unreliable disability determination."

Legal errors regarding the duty to develop the record warrant remand. *See, e.g. Rosa v. Callahan*, 168 F.3d 72, 79–80 (2d Cir. 1999) (Sotomayor, C.J.) (remanding where ALJ failed to fully develop record by failing to obtain or attempting to obtain records); *La Torre v. Colvin*, 2015 WL 321881, at *12 (remanding where ALJ failed to seek further information from treating physicians or consultative examiners despite insufficient evidence concerning scope of claimant's work-related capabilities). Accordingly, the Report's determination that the case be remanded to the SSA with the instruction to give proper weight to the opinion of Plaintiff's treating sources and to further develop the record is adopted.

### B. New Evidence Submitted to Appeals Council

Defendants also argue that the Report "concluded that remand is necessary because Plaintiff submitted new and material evidence to the Appeals Council." Defendants

mischaracterize the Report.  The Report correctly concluded, not that remand is necessary *because* of the new evidence, but that upon remand, the new evidence should be considered by the ALJ because it is now part of the administrative record.[3]  This directive is not inconsistent with SSA regulations.  *See* 20 C.F.R. § 404.983 ("Any issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in your case.").  Accordingly, the Report's instruction that the ALJ consider the evidence submitted to the Appeals Council is not incorrect and is also adopted.

## IV.   CONCLUSION

For the foregoing reasons, the Report is ADOPTED in its entirety as the opinion of the Court.  Plaintiff's motion for judgment on the pleadings is DENIED.  The Commissioner's motion for judgment on the pleadings is GRANTED.  The Clerk is directed to close the motions open at Docket Nos. 16 and 21 and to close this case.

Dated: February 10, 2017
       New York, New York

                                                 LORNA G. SCHOFIELD
                                                UNITED STATES DISTRICT JUDGE

---

[3] The Second Circuit recently addressed the consideration of evidence that post-dates the ALJ's decision in *Evans v Colvin*, 649 Fed. App'x 35 (2d Cir. 2016) (summary order).  The Court remanded for consideration of evidence pertaining only to the relevant period -- before the ALJ decision -- but found no error in the Appeals Council's conclusion that medication reports post-dating the decision were not material.  *Id*. at 37 ( "20 C.F.R. § 404.976(b)(1) plainly states that the 'Appeals Council will consider . . . any new and material evidence submitted to it which relates to the period *on or before the date of the administrative law judge hearing decision*.'").  "While evidence from a later evaluation can be material to an earlier time period, such evidence must be both (1) relevant to the claimant's condition during the relevant period and (2) probative, and additionally must create a reasonable possibility that the new evidence would have influenced the Commissioner to decide claimant's application differently."  *Id*. at 38 (internal quotation marks and citation omitted).  On remand, the ALJ should apply this test to evidence of Plaintiff's third cardiac catheterization, particularly in light of the ALJ's prior finding that Plaintiff had not had any recent surgery or cardiac catheterization.